**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 29, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Hector O. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-2979-CDA

Dear Counsel:

On September 10, 2025, Plaintiff Hector O. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 13, 15, and 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") benefits on October 4, 2021, alleging a disability onset of March 13, 2021. Tr. 24. Plaintiff's claims were denied initially and on reconsideration. Tr. 24. On August 13, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 24. Following the hearing, on September 9, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 21. The Appeals Council denied Plaintiff's request for review, Tr. 4, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a

[1] 42 U.S.C. §§ 301 et seq.

severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 13, 2021, the alleged onset date." Tr. 27. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "status post work-related accident on March 13, 2021, resulting in injuries to the head, face, nose, and right eye; post concussive syndrome; post traumatic headaches; right eye blindness and occipital neuralgia; and obesity." Tr. 27. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "mild neurocognitive disorder secondary to traumatic brain injury." Tr. 27. At step three, the ALJ determined that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 29. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant can occasionally climb, stoop, crouch, kneel, and crawl. The claimant can balance on even surfaces and stand and walk on level terrain, but should avoid walking, standing, and crouching upon uneven terrain and very narrow, slippery, or erratically moving surfaces. The claimant can tolerate only occasional exposure to wetness, humidity, flashing lights, loud and very loud noise, as defined in the Dictionary of Occupational Titles (DOT), vibration, and concentrated respiratory irritants, such as fumes, odors, dust, gases, and poorly ventilated areas; and can tolerate no exposure to workplace hazards of ladders, ropes, and scaffolds, high exposed places, and dangerous, unguarded machinery. The claimant has loss of vision in one eye with corresponding loss of peripheral vision in the other eye; and is limited to occupations that can be performed with monocular vision. The claimant is capable of understanding, remembering, and carrying out simple instructions on a regular and sustained basis to complete a normal work day and work week.

Tr. 31-32. The ALJ determined that Plaintiff was unable to perform past relevant work as a welder (DOT[2] #810.384-014). The ALJ also found that before July 19, 2024, there were jobs that existed in significant numbers in the national economy. Tr. 39. However, beginning on July 19, 2024, Plaintiff's age category changed to an individual closely approaching advanced age and there were no jobs that exist in significant numbers in the national economy that he could perform. Tr. 40. Therefore, the ALJ concluded that Plaintiff was not disabled before July 19, 2024, but became

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

disabled on that date and has continued to be disabled through the date of the decision. Tr. 41.

## III. LEGAL STANDARD

The Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review considers only whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff raises one argument on appeal: that the ALJ's RFC determination was improper because they did not issue a logical, narrative discussion supporting the decision. ECF 15, at 8. Defendant argues that the ALJ performed a proper function-by-function analysis and sufficiently accounted for the tasks that Plaintiff could perform. ECF 15, at 2.

Plaintiff argues that the ALJ failed in building the required "'logical bridge' between the evidence of severe post-traumatic headaches and vertigo/disequilibrium and the functional demands of competitive work on a 'regular and continuing basis.'" ECF 13, at 9. Despite noting a history of headache complaints beginning with the work injury itself, the ALJ did not find the headaches to be work preclusive but did "include environmental limitations and simple instructions in the [RFC] considering his headaches and post-concussion syndrome." *Id.* (quoting Tr. 36). Plaintiff argues that the RFC does not account for symptoms noted by the ALJ "in terms of their frequency, duration and resulting functional effects on persistence and attendance over a normal workday and workweek." *Id.* at 11 (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). In Plaintiff's view, this omission is critical because the ALJ references headaches and their effects on Plaintiff but offers no corresponding limitations in the RFC addressing the consequences of such headaches and related vertigo. *Id.* at 11-12. Rather than include limitations such as time off task, unscheduled breaks, absences, or being late/leaving early, the ALJ simply omitted them by writing that the headaches were "not work preclusive" and provided only for some environmental limits and "simple instructions." ECF 13, at 11-12.

A claimant's RFC represents "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) alteration in original)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Here, the RFC expressed the ALJ's conclusions that Plaintiff could perform a host of tasks, with limitations on complexity, frequency, duration, and environment, among other things. Tr. 31-33. In reaching this conclusion, the ALJ presented Plaintiff's medical history across thirteen pages, including relevant medical records, subjective testimony, and medical opinions. *Id.* at 27-40. The ALJ explained that it found the impairments "could reasonably be expected to cause the alleged symptoms" before explaining why the claimed effects were inconsistent with the evidence in the record. *Id.* at 33. The ALJ walked through the records of medical visits and physical therapy, as well as daily activities and employment, before assessing the persuasiveness of medical opinions. In recounting all of this evidence, the ALJ spoke to which proposed limitations would address the symptoms reflected in the record. In the end, the RFC noted that Plaintiff:

(1) could "perform sedentary work";
(2) "can occasionally climb, stoop, crouch, kneel, and crawl";
(3) "can balance on even surfaces and stand and walk on level terrain, but should avoid walking, standing, and crouching upon uneven terrain and very narrow, slippery, or erratically moving surfaces";
(4) "can tolerate only occasional exposure to wetness, humidity, flashing lights, loud and very loud noise; vibration and concentrated respiratory irritants, such as fumes, odors, dust, gases, and poorly ventilated areas";
(5) "can tolerate no exposure to workplace hazards of ladders, ropes, and scaffolds, high exposed places, and dangerous unguarded machinery";
(6) "is limited to occupations that can be performed with monocular vision"; and
(7) can "understand, remember, and carry out simple instructions on a regular and sustained basis to complete a normal work day and work week.

Tr. 31-33. The ALJ opined that the limitations reflected in (3), (4), and (5) above were necessary environmental limitations "considering [Plaintiff's] headaches and post-concussion syndrome," that limitation (7) also related to those impairments, that limitation (6) accounted for Plaintiff's partial loss of vision, and that the postural limitation in (2) and the environmental limitations accounted for Plaintiff's obesity. *Id.* at 35-36.

The multi-page discussion did more than merely list evidence; it "cit[es] specific medical facts . . . and nonmedical evidence," explains how the ALJ weighed such evidence, and attributes the proposed limitations to conclusions drawn from that evidence. Read as a whole, this discussion provides a logical bridge connecting the evidence with the ALJ's conclusions and decisions in crafting the RFC. So long as that bridge exists, it is irrelevant whether this Court (or any other) would reach the same conclusion based on the same evidence. The Court declines to "re-weigh conflicting evidence" regarding Plaintiff's headaches or "substitute our judgment for that of" the ALJ. *Craig*, 76 F.3d at 589.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge